1

2

3                                          EÒËZCŠÒÖÆÆÆFEÐCGEFHE

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   EUGENE HAMILTON,                    )    No. C 11-0227 RMW (PR)
                                         )
12              Plaintiff,               )    ORDER GRANTING
                                         )    DEFENDANTS' MOTION FOR
13        v.                             )    SUMMARY JUDGMENT
                                         )
14   J. RHOADS, et al.,                  )
                                         )    (Doc. No. 66)
15              Defendants.              )
     _____)

16

17        Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42

18   U.S.C. § 1983.  He alleges that defendants Nurse Practitioner ("NP") Rhoads, Licensed

19   Vocational Nurse ("LVN") Chu, Supervising Registered Nurse ("SRN") Shytle, and SRN Lorico

20   were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

21   Defendants move for summary judgment, arguing that there is no genuine issue of material fact

22   and that they are entitled to judgment as a matter of law.  Plaintiff has opposed the motion, and

23   defendants have filed a reply.  Having carefully considered the papers submitted, the court

24   GRANTS defendants' motion for summary judgment, for the reasons set out below.

                                 **BACKGROUND**[1]

25        On February 25, 2006, plaintiff sustained a lumbar spinal injury.  (Dkt. 2 at 4.)

26   Approximately a year later, on August 16, 2007, Dr. John Fitter at the Lancaster prison

27

28
     _____
          [1] The following facts are undisputed unless otherwise indicated.

     Order Granting Defendants' Motion for Summary Judgment
     G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd

1   recommended that plaintiff be medically transferred to a medical facility to receive medical and

2   therapeutic care. (Dkt. 72 at 2; MSJ, Ex. A ("Pl. Depo.") at 13.) In 2008, plaintiff was

3   transferred to Salinas Valley State Prison ("SVSP"). (Pl. Depo. at 12.) On May 18 2008,

4   plaintiff suffered a cervical spine injury while at SVSP, and Dr. Mohammed, his treating

5   physician, prescribed methadone for pain management. (Pl. Aff. at 2, 6.) On November 13,

6   2008, the Prison Law Office had a conference call with Chief Medical Officer Joaquin, at SVSP,

7   who stated that SVSP was making inquiries regarding which institutions could provide aquatic

8   therapy for plaintiff. (Pl. Aff. at 2-3, Ex. B.)

9       On June 23, 2009, plaintiff showed NP Rhoads a copy of the letter from the Prison Law

10  Office regarding Joaquin's statement. (Pl. Aff. at 3.) Plaintiff requested a medical transfer at

11  that time. (Id.) NP Rhoads never attempted to expedite plaintiff's medical transfer. (Pl. Depo.

12  at 25.) On April 6, 2010, plaintiff saw NP Rhoads for an appointment; however, rather than

13  conduct a medical exam, NP Rhoads merely continued to prescribe methadone. (Dkt. 2 at 5.)

14  Plaintiff again requested NP Rhoads to expedite a medical transfer, but instead, she referred

15  plaintiff to the mental health department. (Pl. Depo. at 26.) Plaintiff explained to NP Rhoads

16  that the methadone he was taking was ineffective, and was not reducing his pain. (Id.)

17      Beginning on July 7, 2010, LVN Chu denied plaintiff his methadone on "no less than 23

18  occasions". (Opp. at 25-30.) On November 4, 2010, in anticipation of his methadone

19  prescription expiring, plaintiff requested a renewal, but SRN Lorico denied it without conducting

20  a medical exam. (Dkt. 2 at 9-10.) Plaintiff alleges that all defendants allowed his prescription to

21  expire on November 8, 2010. (Id. at 12.)

**DISCUSSION**

23      In his federal complaint, plaintiff alleges that (1) NP Rhoads refused to expedite

24  plaintiff's requested medical transfer and allowed his prescription for methadone to expire; (2)

25  LVN Chu prevented plaintiff from receiving his methadone at least 17 times between July and

26  October 2010; and (3) SRN Shytle and SRN Lorico allowed LVN Chu to deny plaintiff his

27  methadone. Defendants argue that they are entitled to summary judgment. The court addresses

28  plaintiff's claims in turn.

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd        2

1    A.      Standard of Review

2           Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

3    that there is "no genuine issue as to any material fact and that the moving party is entitled to

4    judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect

5    the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute

6    as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

7    verdict for the nonmoving party.  Id.

8           The party moving for summary judgment bears the initial burden of identifying those

9    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

10   issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving

11   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

12   reasonable trier of fact could find other than for the moving party.  But on an issue for which the

13   opposing party will have the burden of proof at trial, as is the case here, the moving party need

14   only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

15   at 325.

16          Once the moving party meets its initial burden, the nonmoving party must go beyond the

17   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

18   genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

19   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

20   Liberty Lobby, Inc., 477 U.S. at 248 (1986).  It is not the task of the court to scour the record in

21   search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).

22   The nonmoving party has the burden of identifying, with reasonable particularity, the evidence

23   that precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the

24   moving party is entitled to judgment as a matter of law."  Celotex Corp., 477 U.S. at 323.

25          At the summary judgment stage, the court must view the evidence in the light most

26   favorable to the nonmoving party: if evidence produced by the moving party conflicts with

27   evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

28   forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152,

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd        3

1   1158 (9th Cir. 1999).

2   B.      Law

3          A determination of "deliberate indifference to serious medical needs" involves an

4   examination of two elements: the seriousness of the prisoner's medical need and the nature of the

5   defendants' response to that need. See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

6   overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.

7   1997) (en banc).  A prison official is deliberately indifferent if he knows that a prisoner faces a

8   substantial risk of serious harm and disregards that risk by failing to take reasonable steps to

9   abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be

10  aware of facts from which the inference could be drawn that a substantial risk of serious harm

11  exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of

12  the risk, but was not, then the official has not violated the Eighth Amendment, no matter how

13  severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

14  C.      Plaintiff's claims

15              1.      NP Rhoads

16         Plaintiff claims that he saw NP Rhoads five times:  June 23, 2009; September 2, 2009;

17  April 6, 2010, November 9 or 10, 2010; and November 22, 2010.  (Opp. at 20.)   He alleges that

18  at none of those encounters did NP Rhoads "actively further" plaintiff's requests for a medical

19  transfer.[2]  (Id.)  Plaintiff also alleges that NP Rhoads allowed his prescription for methadone to

20  expire on November 9, 2010.

21         Even assuming that plaintiff had a serious medical condition, there is an absence of

22  evidence that NP Rhoads knew that plaintiff faced a substantial risk of harm if she did not

23  expedite a medical transfer, or that she consciously disregarded it by failing to take reasonable

24  ————————————————

25         [2] Plaintiff insists that his medical transfer continued to be delayed.  Presumably, plaintiff
    believes he was due for a medical transfer based on a November 26, 2008, letter addressed to
26  him from the Prison Law Office.  However, a review of the letter demonstrates that, in fact, Dr.
    Joaquin did not recommend a medical transfer. (Pl. Aff., Ex. B.) Dr. Joaquin did, however,
27  indicate that he was researching institutions that could provide aquatic therapy.  (Id.)  He also
    relayed that he was looking into alternatives to aquatic therapy.  (Id.)  The court has not
28  discovered any evidence in the record that plaintiff was ever approved for a medical transfer.

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd          4

1    steps to abate it.  See Farmer, 511 U.S. 825, 837 (1994).

2          The evidence shows that, on April 6, 2010, NP Rhoads noted that plaintiff's degenerative

3    disc disease was stable.  (MSJ, Ex. B ("Decl. Rhoads") at ¶ 6.)  Even assuming that plaintiff

4    requested that NP Rhoads expedite a medical transfer, NP Rhoads' conclusion that plaintiff's

5    disc disease was stable does not demonstrate that she knew plaintiff faced a substantial risk of

6    harm by not expediting a medical transfer.  See id.  Plaintiff does not present any evidence to the

7    contrary.  At most, plaintiff asserts that NP Rhoads "must" have known that the treatment at

8    SVSP was "subpar" and that she "must" have known that the 36-month delay (calculated from

9    the day that Dr. Joaquin indicated SVSP was researching aquatic therapy facilities) caused

10   plaintiff unnecessary pain.  (Dkt. 2 at 6.)  However, he does not support these self-serving and

11   conclusory statements with any evidence.  Thus, they are insufficient to establish a genuine issue

12   of material fact.  See Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001); see also

13   Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case,

14   conclusory statement of bias to sufficient to carry nonmoving party's burden).  The law is clear

15   that even if NP Rhoads should have been aware of a substantial risk, but was not, she has not

16   violated the Eighth Amendment.  See Gibson, 290 F.3d at 1188.

17         More importantly, NP Rhoads had no authority to expedite, request, or authorize a

18   transfer.  (Decl. Rhoads at ¶ 10.)  Indeed, plaintiff concedes that, generally, inmates appear

19   before the classification committee on an annual basis, at which time, the inmates are reviewed

20   for transfers.  (Pl. Depo. at 68.)  According to NP Rhoads, only the Chief Medical Officer can

21   recommend a medical transfer, and then, such recommendation must be approved by custody

22   and prison administrative staff.  (Decl. Rhoads at ¶ 10.)  Here, there is no evidence that the cause

23   of plaintiff's delay in being medically transferred was in any way attributable to NP Rhoads.

24   Liability may be imposed on an individual defendant under section 1983 only if the plaintiff can

25   show that the defendant proximately caused the deprivation of the federally protected right.  See

26   Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  According to plaintiff, he complained to NP

27   Rhoads several times and requested a medical transfer.  Plaintiff intimates that NP Rhoads

28   should have tried to expedite the process.  There is no evidence, however, that she was required

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd          5

1    to take such additional steps.  NP Rhoads was not authorized to make such a recommendation

2    and there is no competent evidence that she was responsible for any delay in plaintiff's request

3    for a transfer.  See, e.g., Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (finding

4    defendant doctor entitled to summary judgment where plaintiff claimed he did not receive

5    antibiotics prescribed for him by defendant doctor, but failed to produce any evidence showing

6    such failure was in any way within defendant doctor's control).

7         Plaintiff also claims that NP Rhoads allowed his methadone prescription to expire.  At

8    SVSP, the distribution of methadone requires Direct Observed Therapy ("DOT").  (Decl. Rhoads

9    at ¶ 12.)  If an inmate fails to adhere to the DOT policy, appropriate action is taken, which may

10   include discontinuation of the prescription.  (Id.)  According to medical records and NP Rhoads,

11   on November 9, 2010, plaintiff's methadone prescription was discontinued because he refused to

12   accept the medicine on several occasions, refused to comply with DOT, and nursing staff

13   believed plaintiff was trying to divert ingestion.  (Id. at ¶ 17.)  That same day, plaintiff was

14   prescribed acetaminophen, which was also an appropriate pain medication for his condition.  (Id.

15   at ¶ 19; MSJ, Ex. D ("Decl. Lorico") at ¶ 8.)  Because the medical records indicated that plaintiff

16   often refused his medication, and was verbally abusive to staff who attempted to treat him, the

17   prescription for acetaminophen was an appropriate alternative because it allowed plaintiff to

18   keep it with him, so that he could maintain control of his own pain medications.  (Decl. Rhoads

19   at ¶ 20.)  Despite this alternative, plaintiff refused the acetaminophen.  (Decl. Lorico at ¶ 8.)

20        Viewing the facts in the light most favorable to plaintiff, the court concludes that he has

21   not shown evidence that precludes summary judgment.  Plaintiff has not disputed that his actions

22   did not comply with DOT.  Moreover, even though plaintiff complains that NP Rhoads allowed

23   his methadone prescription to expire, he has not shown that there was any resulting harm.  See

24   McGuckin, 974 F.2d at 1060.  Indeed, plaintiff stated that on April 6, 2010, he told NP Rhoads

25   that the methadone was ineffective and was not doing anything to minimize the pain.  (Pl. Depo.

26   at 26.)  Further, even if plaintiff believed that his prescription for methadone should have been

27   renewed in November 2010, he has failed to show that terminating the prescription and offering

28   acetaminophen instead was medically unacceptable under the circumstances, and that they chose

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd          6

1   this course in conscious disregard of an excessive risk to his health.  See Toguchi v. Chung, 391

2   F.3d 1051, 1058 (9th Cir. 2004).  Because there is an absence of evidence to support plaintiff's

3   allegations, defendants' motion to for summary judgment is granted as to this claim.

4          2.      LVN Chu

5          Plaintiff alleges that LVN Chu dispensed his methadone to him three times a day.  From

6   July through October 2010, plaintiff claims that LVN Chu often passed over him during the noon

7   rounds.  (Pl. Depo. at 35.)  LVN Chu, on the other hand, declares that plaintiff often refused the

8   methadone and was verbally aggressive with her.  (MSJ, Ex. C ("Decl. Chu") at ¶¶ 13-16.)

9          Negligence cannot establish liability under the Eighth Amendment.  See Farmer, 511

10  U.S. at 835-36 & n.4.  An "official's failure to alleviate a significant risk that he should have

11  perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment."

12  Id. at 838.  In order for deliberate indifference to be established, there must be a purposeful act

13  or failure to act on the part of the defendant, as well as resulting harm.  McGuckin, 974 F.2d at

14  1060.  Even assuming plaintiff's version of the facts is true, he has not demonstrated that LVN

15  Chu was deliberately indifferent to his serious medical needs.

16         Plaintiff's general claim is that the methadone was needed to alleviate his back pain.  At

17  the time, plaintiff was scheduled to receive three doses of methadone per day.  He does not

18  submit any evidence that missing the noontime dose of methadone approximately 20 times over

19  the course of three to four months resulted in significant injury, or the unnecessary and wanton

20  infliction of pain.  Moreover, there is no evidence that LVN Chu knew or should have known

21  that plaintiff faced a substantial risk of serious harm if he missed a morning or noontime dose of

22  methadone periodically, yet disregarded that risk by failing to take reasonable steps to abate it.

23  See Farmer, 511 U.S. at 837.  At most, plaintiff's allegations that LVN Chu denied or delayed

24  his methadone doses approximately 20 times over the course of months indicates negligence on

25  LVN Chu's part, which is insufficient to make out a violation of the Eighth Amendment.  See

26  Toguchi, 391 F.3d at 1060-61; see, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998)

27  (finding no merit in claims stemming from alleged delays in administering pain medication,

28  treating broken nose and providing replacement crutch, because claims did not amount to more

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd          7

1   than negligence); McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing or treating a

2   medical condition, without more, does not violate a prisoner's 8th Amendment rights);

3   O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for

4   aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation;

5   isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to

6   level of unnecessary and wanton infliction of pain).  Thus, defendants are entitled to summary

7   judgment on this claim.

8              3.        SRN Shytle and Lorico

9        Plaintiff asserts that SRN Shytle and SRN Lorico permitted LVN Chu to delay or deny

10   plaintiff his methadone.  (Pl. Depo. at 44-45.)  Specifically, plaintiff alleges that SRN Shytle did

11   not "become involved" until he investigated plaintiff's complaints against LVN Chu, at the

12   earliest, on November 10, 2010.  (Id. at 36-38, 41.)  Similarly, plaintiff's first complaint against

13   SRN Lorico was in September 2010.

14        A supervisor may be liable under section 1983 upon a showing of (1) personal

15   involvement in the constitutional deprivation or (2) a sufficient causal connection between the

16   supervisor's wrongful conduct and the constitutional violation.  Henry A. v. Willden, 678 F.3d

17   991, 1003-04 (9th Cir. 2012).  "The law clearly allows actions against supervisors under section

18   1983 as long as a sufficient causal connection is present and the plaintiff was deprived under

19   color of law of a federally secured right."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011),

20   cert. denied, 132 S.Ct. 2101 (2012) (internal quotation marks and citation omitted).  "The

21   requisite causal connection can be established . . . by setting in motion a series of acts by others,"

22   Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991) (alteration in original;

23   internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by

24   others, which [the supervisor] knew or reasonably should have known would cause others to

25   inflict a constitutional injury," Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 968 (9th

26   Cir. 2001).

27        With regard to SRN Shytle, by the time he was aware of plaintiff's claims that LVN Chu

28   was denying him pain medication, there was nothing that SRN Shytle could do about it because

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd          8

1 plaintiff's methadone prescription had already expired.  Once the prescription had expired, and

2 LVN Chu was no longer denying plaintiff his methadone, it is difficult to imagine how SRN

3 Shytle could have acquiesced in any wrongdoing on LVN Chu's part.  See, e.g., Jones v. County

4 of Sacramento, No. 09-1025 WBS DAD, 2010 WL 2843409, *7 (E.D. Cal. July 20, 2010)

5 (discussing Ninth Circuit cases involving supervisors' review of subordinates allegedly

6 unconstitutional conduct and concluding that "the Ninth Circuit has found a supervisor's conduct

7 sufficient to establish the requisite causal link only when the supervisor engaged in at least some

8 type of conduct before the unconstitutional incident and the supervisor knew or should have

9 known that his conduct could cause the constitutional violation the plaintiff has suffered").

10 Without any allegation that SRN Shytle engaged in wrongful conduct that caused the alleged

11 deliberate indifference, SRN Shytle is entitled to summary judgment.  Cf. Starr, 652 F.3d at 1207

12 (finding no qualified immunity where plaintiff pled specific facts that plausibly suggest

13 supervisors' "knowledge of" and "acquiescence in" unconstitutional conduct of subordinates).

14         More importantly, regarding both SRN Shytle and Lorico, there is no evidence that they

15 were personally involved in denying plaintiff the methadone, or that there was a causal

16 connection between their conduct and the alleged constitutional violation.  Here, the court has

17 already determined that there is an absence of evidence that LVN Chu violated plaintiff's

18 constitutional rights.  Thus, there can be no supervisorial liability.  Jackson v. City of Bremerton,

19 268 F.3d 646, 653-654 (9th Cir. 2001) ("Neither a municipality nor a supervisor . . . can be held

20 liable under § 1983 where no injury or constitutional violation has occurred.").

21                                    **CONCLUSION**

22      Defendants' motion for summary judgment is GRANTED.[3]  Judgment shall be entered in

23 favor of defendants.  The clerk shall terminate all pending motions and close the file.

24      IT IS SO ORDERED.

25 DATED: _____

RONALD M. WHYTE
26                                United States District Judge

27 _____

28    [3]  The court finds it unnecessary to address defendants' argument for summary judgment
on the basis of qualified immunity.

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd      9

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


EUGENE HAMILTON,

                Plaintiff,

   v.

T. RHOADS et al,

                Defendant.

_____/

Case Number: CV11-00227 RMW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 22, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Eugene Hamilton T-33081
Salinas Valley State Prison
CA State Prison-Salinas
P O Box 1050
Salinas, CA 93960-1050

Dated: January 22, 2013

                                Richard W. Wieking, Clerk
                                By: Jackie Lynn Garcia, Deputy Clerk