IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EUGENE HAMILTON, | ) | No. C 11-0227 RMW (PR) |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR |
| v. | ) ) | SUMMARY JUDGMENT |
| J. RHOADS, et al., | ) ) | (Doc. No. 66) |
| Defendants. | ) ) | |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. He alleges that defendants Nurse Practitioner ("NP") Rhoads, Licensed Vocational Nurse ("LVN") Chu, Supervising Registered Nurse ("SRN") Shytle, and SRN Lorico were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Defendants move for summary judgment, arguing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff has opposed the motion, and defendants have filed a reply. Having carefully considered the papers submitted, the court GRANTS defendants' motion for summary judgment, for the reasons set out below.

## BACKGROUND[1]

On February 25, 2006, plaintiff sustained a lumbar spinal injury. (Dkt. 2 at 4.) Approximately a year later, on August 16, 2007, Dr. John Fitter at the Lancaster prison

---

[1] The following facts are undisputed unless otherwise indicated.

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd

recommended that plaintiff be medically transferred to a medical facility to receive medical and therapeutic care. (Dkt. 72 at 2; MSJ, Ex. A ("Pl. Depo.") at 13.) In 2008, plaintiff was transferred to Salinas Valley State Prison ("SVSP"). (Pl. Depo. at 12.) On May 18 2008, plaintiff suffered a cervical spine injury while at SVSP, and Dr. Mohammed, his treating physician, prescribed methadone for pain management. (Pl. Aff. at 2, 6.) On November 13, 2008, the Prison Law Office had a conference call with Chief Medical Officer Joaquin, at SVSP, who stated that SVSP was making inquiries regarding which institutions could provide aquatic therapy for plaintiff. (Pl. Aff. at 2-3, Ex. B.)

On June 23, 2009, plaintiff showed NP Rhoads a copy of the letter from the Prison Law Office regarding Joaquin's statement. (Pl. Aff. at 3.) Plaintiff requested a medical transfer at that time. (Id.) NP Rhoads never attempted to expedite plaintiff's medical transfer. (Pl. Depo. at 25.) On April 6, 2010, plaintiff saw NP Rhoads for an appointment; however, rather than conduct a medical exam, NP Rhoads merely continued to prescribe methadone. (Dkt. 2 at 5.) Plaintiff again requested NP Rhoads to expedite a medical transfer, but instead, she referred plaintiff to the mental health department. (Pl. Depo. at 26.) Plaintiff explained to NP Rhoads that the methadone he was taking was ineffective, and was not reducing his pain. (Id.)

Beginning on July 7, 2010, LVN Chu denied plaintiff his methadone on "no less than 23 occasions". (Opp. at 25-30.) On November 4, 2010, in anticipation of his methadone prescription expiring, plaintiff requested a renewal, but SRN Lorico denied it without conducting a medical exam. (Dkt. 2 at 9-10.) Plaintiff alleges that all defendants allowed his prescription to expire on November 8, 2010. (Id. at 12.)

**DISCUSSION**

In his federal complaint, plaintiff alleges that (1) NP Rhoads refused to expedite plaintiff's requested medical transfer and allowed his prescription for methadone to expire; (2) LVN Chu prevented plaintiff from receiving his methadone at least 17 times between July and October 2010; and (3) SRN Shytle and SRN Lorico allowed LVN Chu to deny plaintiff his methadone. Defendants argue that they are entitled to summary judgment. The court addresses plaintiff's claims in turn.

A.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, Inc., 477 U.S. at 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152,

1158 (9th Cir. 1999).

B. <u>Law</u>

A determination of "deliberate indifference to serious medical needs" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendants' response to that need. <u>See</u> <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds by</u> <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." <u>Id.</u> If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1188 (9th Cir. 2002).

C. <u>Plaintiff's claims</u>

    1. <u>NP Rhoads</u>

Plaintiff claims that he saw NP Rhoads five times: June 23, 2009; September 2, 2009; April 6, 2010, November 9 or 10, 2010; and November 22, 2010. (Opp. at 20.) He alleges that at none of those encounters did NP Rhoads "actively further" plaintiff's requests for a medical transfer.[2] (<u>Id.</u>) Plaintiff also alleges that NP Rhoads allowed his prescription for methadone to expire on November 9, 2010.

Even assuming that plaintiff had a serious medical condition, there is an absence of evidence that NP Rhoads knew that plaintiff faced a substantial risk of harm if she did not expedite a medical transfer, or that she consciously disregarded it by failing to take reasonable

---

[2] Plaintiff insists that his medical transfer continued to be delayed. Presumably, plaintiff believes he was due for a medical transfer based on a November 26, 2008, letter addressed to him from the Prison Law Office. However, a review of the letter demonstrates that, in fact, Dr. Joaquin did not recommend a medical transfer. (Pl. Aff., Ex. B.) Dr. Joaquin did, however, indicate that he was researching institutions that could provide aquatic therapy. (<u>Id.</u>) He also relayed that he was looking into alternatives to aquatic therapy. (<u>Id.</u>) The court has not discovered any evidence in the record that plaintiff was ever approved for a medical transfer.

Order Granting Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Hamilton227msj.wpd     4

steps to abate it. See Farmer, 511 U.S. 825, 837 (1994).

The evidence shows that, on April 6, 2010, NP Rhoads noted that plaintiff's degenerative disc disease was stable. (MSJ, Ex. B ("Decl. Rhoads") at ¶ 6.) Even assuming that plaintiff requested that NP Rhoads expedite a medical transfer, NP Rhoads' conclusion that plaintiff's disc disease was stable does not demonstrate that she knew plaintiff faced a substantial risk of harm by not expediting a medical transfer. See id. Plaintiff does not present any evidence to the contrary. At most, plaintiff asserts that NP Rhoads "must" have known that the treatment at SVSP was "subpar" and that she "must" have known that the 36-month delay (calculated from the day that Dr. Joaquin indicated SVSP was researching aquatic therapy facilities) caused plaintiff unnecessary pain. (Dkt. 2 at 6.) However, he does not support these self-serving and conclusory statements with any evidence. Thus, they are insufficient to establish a genuine issue of material fact. See Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001); see also Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement of bias to sufficient to carry nonmoving party's burden). The law is clear that even if NP Rhoads should have been aware of a substantial risk, but was not, she has not violated the Eighth Amendment. See Gibson, 290 F.3d at 1188.

More importantly, NP Rhoads had no authority to expedite, request, or authorize a transfer. (Decl. Rhoads at ¶ 10.) Indeed, plaintiff concedes that, generally, inmates appear before the classification committee on an annual basis, at which time, the inmates are reviewed for transfers. (Pl. Depo. at 68.) According to NP Rhoads, only the Chief Medical Officer can recommend a medical transfer, and then, such recommendation must be approved by custody and prison administrative staff. (Decl. Rhoads at ¶ 10.) Here, there is no evidence that the cause of plaintiff's delay in being medically transferred was in any way attributable to NP Rhoads. Liability may be imposed on an individual defendant under section 1983 only if the plaintiff can show that the defendant proximately caused the deprivation of the federally protected right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). According to plaintiff, he complained to NP Rhoads several times and requested a medical transfer. Plaintiff intimates that NP Rhoads should have tried to expedite the process. There is no evidence, however, that she was required

1 to take such additional steps.  NP Rhoads was not authorized to make such a recommendation
2 and there is no competent evidence that she was responsible for any delay in plaintiff's request
3 for a transfer.  See, e.g., Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (finding
4 defendant doctor entitled to summary judgment where plaintiff claimed he did not receive
5 antibiotics prescribed for him by defendant doctor, but failed to produce any evidence showing
6 such failure was in any way within defendant doctor's control).

7      Plaintiff also claims that NP Rhoads allowed his methadone prescription to expire.  At
8 SVSP, the distribution of methadone requires Direct Observed Therapy ("DOT").  (Decl. Rhoads
9 at ¶ 12.)  If an inmate fails to adhere to the DOT policy, appropriate action is taken, which may
10 include discontinuation of the prescription.  (Id.)  According to medical records and NP Rhoads,
11 on November 9, 2010, plaintiff's methadone prescription was discontinued because he refused to
12 accept the medicine on several occasions, refused to comply with DOT, and nursing staff
13 believed plaintiff was trying to divert ingestion.  (Id. at ¶ 17.)  That same day, plaintiff was
14 prescribed acetaminophen, which was also an appropriate pain medication for his condition.  (Id.
15 at ¶ 19; MSJ, Ex. D ("Decl. Lorico") at ¶ 8.)  Because the medical records indicated that plaintiff
16 often refused his medication, and was verbally abusive to staff who attempted to treat him, the
17 prescription for acetaminophen was an appropriate alternative because it allowed plaintiff to
18 keep it with him, so that he could maintain control of his own pain medications.  (Decl. Rhoads
19 at ¶ 20.)  Despite this alternative, plaintiff refused the acetaminophen.  (Decl. Lorico at ¶ 8.)

20      Viewing the facts in the light most favorable to plaintiff, the court concludes that he has
21 not shown evidence that precludes summary judgment.  Plaintiff has not disputed that his actions
22 did not comply with DOT.  Moreover, even though plaintiff complains that NP Rhoads allowed
23 his methadone prescription to expire, he has not shown that there was any resulting harm.  See
24 McGuckin, 974 F.2d at 1060.  Indeed, plaintiff stated that on April 6, 2010, he told NP Rhoads
25 that the methadone was ineffective and was not doing anything to minimize the pain.  (Pl. Depo.
26 at 26.)  Further, even if plaintiff believed that his prescription for methadone should have been
27 renewed in November 2010, he has failed to show that terminating the prescription and offering
28 acetaminophen instead was medically unacceptable under the circumstances, and that they chose

this course in conscious disregard of an excessive risk to his health. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Because there is an absence of evidence to support plaintiff's allegations, defendants' motion to for summary judgment is granted as to this claim.

2. LVN Chu

Plaintiff alleges that LVN Chu dispensed his methadone to him three times a day. From July through October 2010, plaintiff claims that LVN Chu often passed over him during the noon rounds. (Pl. Depo. at 35.) LVN Chu, on the other hand, declares that plaintiff often refused the methadone and was verbally aggressive with her. (MSJ, Ex. C ("Decl. Chu") at ¶¶ 13-16.)

Negligence cannot establish liability under the Eighth Amendment. See Farmer, 511 U.S. at 835-36 & n.4. An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." Id. at 838. In order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant, as well as resulting harm. McGuckin, 974 F.2d at 1060. Even assuming plaintiff's version of the facts is true, he has not demonstrated that LVN Chu was deliberately indifferent to his serious medical needs.

Plaintiff's general claim is that the methadone was needed to alleviate his back pain. At the time, plaintiff was scheduled to receive three doses of methadone per day. He does not submit any evidence that missing the noontime dose of methadone approximately 20 times over the course of three to four months resulted in significant injury, or the unnecessary and wanton infliction of pain. Moreover, there is no evidence that LVN Chu knew or should have known that plaintiff faced a substantial risk of serious harm if he missed a morning or noontime dose of methadone periodically, yet disregarded that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. At most, plaintiff's allegations that LVN Chu denied or delayed his methadone doses approximately 20 times over the course of months indicates negligence on LVN Chu's part, which is insufficient to make out a violation of the Eighth Amendment. See Toguchi, 391 F.3d at 1060-61; see, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more

1  than negligence); McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing or treating a
2  medical condition, without more, does not violate a prisoner's 8th Amendment rights);
3  O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for
4  aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation;
5  isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to
6  level of unnecessary and wanton infliction of pain). Thus, defendants are entitled to summary
7  judgment on this claim.

        3.       SRN Shytle and Lorico

9  Plaintiff asserts that SRN Shytle and SRN Lorico permitted LVN Chu to delay or deny
10 plaintiff his methadone. (Pl. Depo. at 44-45.) Specifically, plaintiff alleges that SRN Shytle did
11 not "become involved" until he investigated plaintiff's complaints against LVN Chu, at the
12 earliest, on November 10, 2010. (Id. at 36-38, 41.) Similarly, plaintiff's first complaint against
13 SRN Lorico was in September 2010.
14 A supervisor may be liable under section 1983 upon a showing of (1) personal
15 involvement in the constitutional deprivation or (2) a sufficient causal connection between the
16 supervisor's wrongful conduct and the constitutional violation. Henry A. v. Willden, 678 F.3d
17 991, 1003-04 (9th Cir. 2012). "The law clearly allows actions against supervisors under section
18 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under
19 color of law of a federally secured right." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011),
20 cert. denied, 132 S.Ct. 2101 (2012) (internal quotation marks and citation omitted). "The
21 requisite causal connection can be established . . . by setting in motion a series of acts by others,"
22 Redman v. Cnty. of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991) (alteration in original;
23 internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by
24 others, which [the supervisor] knew or reasonably should have known would cause others to
25 inflict a constitutional injury," Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 968 (9th
26 Cir. 2001).
27 With regard to SRN Shytle, by the time he was aware of plaintiff's claims that LVN Chu
28 was denying him pain medication, there was nothing that SRN Shytle could do about it because

1  plaintiff's methadone prescription had already expired.  Once the prescription had expired, and
2  LVN Chu was no longer denying plaintiff his methadone, it is difficult to imagine how SRN
3  Shytle could have acquiesced in any wrongdoing on LVN Chu's part.  See, e.g., Jones v. County
4  of Sacramento, No. 09-1025 WBS DAD, 2010 WL 2843409, *7 (E.D. Cal. July 20, 2010)
5  (discussing Ninth Circuit cases involving supervisors' review of subordinates allegedly
6  unconstitutional conduct and concluding that "the Ninth Circuit has found a supervisor's conduct
7  sufficient to establish the requisite causal link only when the supervisor engaged in at least some
8  type of conduct before the unconstitutional incident and the supervisor knew or should have
9  known that his conduct could cause the constitutional violation the plaintiff has suffered").
10  Without any allegation that SRN Shytle engaged in wrongful conduct that caused the alleged
11  deliberate indifference, SRN Shytle is entitled to summary judgment.  Cf. Starr, 652 F.3d at 1207
12  (finding no qualified immunity where plaintiff pled specific facts that plausibly suggest
13  supervisors' "knowledge of" and "acquiescence in" unconstitutional conduct of subordinates).

More importantly, regarding both SRN Shytle and Lorico, there is no evidence that they were personally involved in denying plaintiff the methadone, or that there was a causal connection between their conduct and the alleged constitutional violation.  Here, the court has already determined that there is an absence of evidence that LVN Chu violated plaintiff's constitutional rights.  Thus, there can be no supervisorial liability.  Jackson v. City of Bremerton, 268 F.3d 646, 653-654 (9th Cir. 2001) ("Neither a municipality nor a supervisor . . . can be held liable under § 1983 where no injury or constitutional violation has occurred.").

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.[3]  Judgment shall be entered in favor of defendants.  The clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: _____

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

---

[3] The court finds it unnecessary to address defendants' argument for summary judgment on the basis of qualified immunity.

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE HAMILTON,<br><br>            Plaintiff,<br><br>   v.<br><br>T. RHOADS et al,<br><br>            Defendant.                                    / | Case Number: CV11-00227 RMW<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 22, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eugene Hamilton T-33081
Salinas Valley State Prison
CA State Prison-Salinas
P O Box 1050
Salinas, CA 93960-1050

Dated: January 22, 2013

                                                Richard W. Wieking, Clerk
                                                By: Jackie Lynn Garcia, Deputy Clerk